CULPEPPER, Judge.
The plaintiff, Great American Insurance Company, is the collision insurer of the automobile of A. C. Bowman. It paid to Bowman the sum of $556.74, representing accident damages caused to the vehicle, less the sum of $100 deductible. Plaintiff filed this suit against Daniel Davis, alleged to be the party responsible for the accident, to recover the sum paid under its policy. From an adverse judgment, the defendant Davis appealed.
The substantial issue is whether a “receipt” for $122, signed by Mrs. Julia Bowman in favor of Daniel Davis, constituted a transaction or compromise of all of their rights against Davis, with the result that the subsequent conventional subrogation in favor of Great American is of no effect.
No record was taken of the testimony at the trial. The facts are set forth in a “Statement of Facts” by the trial judge and are substantially as follows:
On September 1, 1966, in the City of Alexandria, there was an intersectional collision between the vehicles driven respectively by A. C. Bowman and Daniel Davis. On appeal it is conceded the accident was caused solely by the negligence of Davis.
On September 6, 1966, Mrs. Bowman signed the “receipt” or release which is at issue. It is handwritten on a piece of paper as follows:
“ 9/6/1966
Receive for car wreck $122.00 from Dan Davis.
Mrs. Julia Bowman”
There is no question that the $122 represents the $100 deductible under the Bowman policy, plus a $22 wrecker fee for towing the Bowman automobile to the repair shop. There is a dispute as to whether the parties intended the “receipt” to be a general compromise and release of all liability or only a receipt for the deductible and towage fee.
The Statement of Facts by the trial judge sets forth that Mr. A. C. Bowman testified he talked to Davis 2 or 3 times after the accident but they did not discuss the repairs to the Bowman automobile and did not discuss whether Davis was to pay Bowman for his deductible. However, Bowman did testify that when Davis paid the $122 Davis thought he was “rid of it”.
Mrs. Bowman testified that on September 6, 1966, when she gave the receipt to Daniel Davis for $122, her husband was present in the same room in their home, but he did not expressly authorize her to sign a general release on behalf of the community. She used the word “receipt” instead of “release”, in the document because she had previously experienced trouble signing a “release” document. According to Mrs. Bowman, her intention was to accept the $22 towage fee and the $100 deductible, representing their out-of-pocket expense, and there was no intention to give Davis a general release from all liability.
Daniel Davis testified he understood the $122 represented the deductible and the towage fee, but he thought he would not have to pay anything further.
In his written reasons for judgment the trial judge construed the “receipt” as follows :
“The so-called ‘receipt’ given September 6, 1966, by Mrs. Bowman to Davis, assuming that she was authorized to release a claim in favor of the community, was merely a release of the Bowmans against Daniel Davis for the sum of $122 and specifically for the towage and the deductible provision of their contract. The court feels that a meeting of the minds was had on the content and legal effect of this informal paper entitled ‘Receipt’. The Bowmans legally intended to do more than divest themselves of their right against Daniel Davis for the recovery of their deductible and the towage charge.
*677 “This Court is of the opinion -that Mr. Bowman still had the power to subrogate his insurer to his right of action against Daniel Davis for the damages sustained to the automobile and he did so by the execution of a subrogation instrument in favor of his insurer. This Court thus feels that both instruments, i. e., the receipt of September 6, 1966, and the subrogation of September 28, 1966, have legal effect, but they relate to two different things.”
The pertinent articles of our Civil Code dealing with transactions or compromise are as follows:
“Art. 3071. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must be reduced into writing.”
“Art. 3073. Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
“The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.”
 The written “receipt” in this case does not expressly state whether it is a general or only a partial release. Hence, parol testimony was admissible to show the intention of the parties, Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911 (1961). Certainly there is no manifest error in the finding of fact of the trial judge that the parties did not intend a general release of all liability but, instead, intended only a receipt for the out-of-pocket expense of the Bow-mans. Both Mr. and Mrs. Bowman testified this was their understanding of the document in question. Even Daniel Davis admitted on cross-examination that he knew the Bowmans carried insurance and that the $122 represented the deductible plus the $22 towage fee. It may be that Davis did not understand that Bowman’s insurer might later take a subrogation for the cost of repairs paid by it and might seek to recover therefor against Davis. However, even Davis did not think he was being released from that portion of the cost of repairs above the $100 deductible and the towage fee.
Having concluded the “receipt” must be construed as a release only of the deductible and the towage fee, it follows that Bowman could subsequently subrogate to Great American Insurance Company his claim against Davis for the remainder of the cost of repairs.[1] However, we notice that the $556.74 paid by plaintiff for repairs includes a towage fee of $22.50, which Davis had admittedly already paid. To this extent the subrogation must be reduced, otherwise Davis would be paying the same item twice.
*678 For the reasons assigned, the judgment appealed is amended to reduce the award to $534.24. Otherwise, it is affirmed. All costs of this appeal are assessed against the defendant appellant.
Amended and affirmed.
On Application for Rehearing
En Banc. Rehearing denied.

. Having reached this conclusion, it is unnecessary for us to discuss plaintiff’s further contention that under London Guarantee & Accident Insurance Co. v. Vicksburg, S. & P. R. Co., 153 La. 287, 95 So. 771 (1923) and its progeny, the insurer has an independent cause of action in tort under LSA-C.C. Article 2315 which cannot be prejudiced by any attempted compromise or release by the insured. The defendant contends this jurisprudence has been overruled by Forcum-James Co. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228 (1957), as explained in the recent case of American Indemnity Co. v. New York F & M Underwriters, Inc., 196 So.2d 592 (1st Cir. La.App.1967). See also the discussion of these problems in The Role of Subrogation by Operation of Law and Related Problems in the Insurance Field, 22 La. Law Rev. 225.