169 P.2d 865

ANDERSON v. ALABAM FREIGHT LINES.

No. 4764.

Supreme Court of Arizona.

June 12, 1946.

314

Struckmeyer & Struckmeyer, of Phœnix, for appellant.

George T. Wilson, of Phœnix, for appellee.

LA PRADE, Judge.

This is an appeal from a judgment awarding damages to the appellee (plaintiff below) against appellant, growing out of a motor vehicle accident. Each of the parties was operating large trucks towing trailers. Appellee's truck weighed, unladen, 20,950 pounds; the trailer, 9,560 pounds, making a combined unladen weight of 30,510 pounds. Both the truck and trailer were equipped with six wheels. Defendant's equipment was a semi-trailer tank truck. The speed of both trucks at the time of the accident was approximately 35 miles per hour. Both parties were guilty of driving in excess of the speed limit.

Sec. 66-103, A.C.A.1939, prior to its amendment in 1945, limited the speed of a motor truck towing a trailer or semi-trailer to 20 miles per hour.

The accident occurred on a bridge about a mile and a half from Paulden, Arizona, on Highway 89 (Prescott-Ashfork highway). Appellant's equipment was going north, and that of appellee south. The bridge was approximately 100 feet in length and 20 feet in width. On each side of the bridge there was a solid concrete wall (guard rail) approximately three feet in height, extending the entire length of the bridge. The surface portion of the highway leading into each end of the bridge was considerably wider than 20 feet. Appellant's driver, through defective lights, or inattention, or both, did not observe that the roadway narrowed to a width of 20 feet where it entered upon the bridge, and apparently neglected to guide his truck to the right center of the roadway at that point, to avoid the side wall of the bridge. The result was that appellant's truck drove straight into the side wall. At this moment appellee's truck had practically traversed the bridge and was approximately twenty feet from emerging off the bridge. The impact of appellant's truck on the side wall of the bridge caused it to jackknife across the roadway directly in the path of appellee's oncoming truck. Appellant's truck completely closed the aperture or entrance (exit for plaintiff) to the bridge, and so to speak, effectively corked the bottle and calked the seams. Plaintiff's driver didn't have time to think "Jack Robinson," much less say the words, before the collision.

Over objection of the defendant, the court admitted evidence of an admission by the driver of the defendant to the effect that "it was all his fault." The conversation took place after both tracks had come to a full stop, flares had been put up, and more than 15 minutes after the collision. The case was tried to the court without a jury. The court found that the sole and proximate cause of the accident was the carelessness and negligence of the defendant. The court, in its findings, found that plaintiff had suffered damages as follows: Towing charges, $149; unloading and reloading his freight, $20; that the repairs to his equipment would necessitate an expenditure of $2,570.73; that by reason of said accident, plaintiff's said truck was rendered useless to plaintiff and non-serviceable in plaintiff's business for a period of forty-one days, and that the reasonable value of the use of said truck for said period was the sum of $20 per day, making a further loss to plaintiff of $820; that the value of said truck immediately prior to said accident was not less than $10,000; that the value of said truck immediately after said accident in its damaged condition was not more than $6,500; that its value after repairs was not more than $9,000; and that plaintiff had been damaged in a sum of not less than $3,500.

The court concluded that the proximate cause of the said accident and the damage to plaintiff's truck was the said carelessness and negligence of defendant in the operation of his said truck and that any negligence of plaintiff, as a matter of law or otherwise, did not contribute to said accident or the resulting damage to plaintiff's truck and trailer. The judgment was for $3,500, without any segregation as to the items taken into consideration in arriving at said sum.

A brief synopsis of the assignments of error are (1) that the uncontradicted evidence shows that the injury was proximately caused or contributed to by the illegal conduct of the plaintiff in operating its vehicle having a total weight in excess of 34,000 pounds upon the highway, in express prohibition of law, and at a speed especially prohibited by law; (2) that the evidence does not support a finding that the sole and proximate cause of the accident was the carelessness and negligence of the defendant; (3) that the court erred in admitting the purported declaration of the defendant driver, "it is my fault," for the reason that said conversation was a narrative of the past event, and not a part of the res gestæ; and (4) that the court erred in its findings in allowing the reasonable value for the use of a truck of $20 per day, and allowing damages in the sum of $820 for its rental value, for the reason that the evidence did not show any loss actually sustained by plaintiff in the securing or renting of another truck.

The legal propositions relied upon in support of the assignments are (1) plaintiff's truck having a total weight in excess of 34,000 pounds, was prohibited by law from being operated upon the highway, and was therefore a trespasser, and could not maintain an action except for wanton negligence; (2) that to drive at a speed in excess of that prescribed by law is negligence per se; (3) statements of an agent to be admissible against the principal, must be part of the res gestæ; (4) reasonable value of loss of use of personal property damaged is not the measure of damages—actual loss sustained being the sole criterion.

■ It is the contention of the appellant that it was the speed and weight of plaintiff's equipment that proximately caused the accident. The Arizona Motor Vehicle Code relating to weight of vehicles in effect at the time of the accident, in part provided as follows:

Sec. 66-129: "No vehicle shall be operated or moved upon any highway which has a total weight, including vehicle and load, in excess of * * * thirty-four thousand pounds * * *"

The section relating to speed then in effect provided that:

"(1) Sec. 66-103: * * * It shall be unlawful for the driver of a vehicle equipped with pneumatic tires, other than passenger vehicles, to drive the same upon a public highway at speeds in excess of the following * * *

"When the gross weight of a vehicle * * * is thirty thousand pounds or more, twenty-five miles per hour; and

"(2) It shall be unlawful for the driver of a motor truck towing a trailer or semi-trailer to drive the same at a speed in excess of twenty miles per hour upon any public highway."

Appellant urges upon this court the now famous "Massachusetts Doctrine" regarding licensing statutes. See Dudley v. Northampton St. R. Co., 202 Mass. 443, 89 N.E. 25, 23 L.R.A.,N.S., 561. This doctrine is to the effect that unlicensed machines on the public highway are outlaws, and damages cannot be recovered for a negligent injury thereto. Appellant reasons that the operation or movement of motor vehicles absolutely prohibited by law makes the vehicle a trespasser upon the highways.

Modern industry demands the use and operation of equipment sufficient to carry loads of many tons in weight. Equipment so designed, and to withstand continuous operation, must be itself of powerful and heavy construction and weight accordingly. It would be strange indeed if the legislature, recognizing these facts, provided for the use of heavy and expensive equipment upon the public highways that could be operated efficiently and economically only by carrying heavy loads, and then restricted the weight of such loads to that carried by small delivery trucks. This point is best illustrated by the facts in this case. Appellee's truck weighed, unladen, 20,950 lbs.;

the trailer 9,560 lbs.; making a combined unladen weight of 30,510 lbs. If the combined weight of the truck and trailer, together with their loads, is limited by law to 34,000 lbs., it means that the load alone could amount to only 3,490 lbs., or less than one ton to each vehicle. It is inconceivable that the legislature intended or contemplated any such effect. We believe that the reasonable and logical interpretation of the statute, as indicated by the language employed, is that the limit of 34,000 lbs. applies to each vehicle and its load and not to the combined weight of two or more vehicles and their loads. We conclude that the appellee was not violating the weight restrictions of the highway code at the time of the accident. Defendant's load weighed 20,712 pounds, and was evenly distributed between the truck and the trailer, making a load of 10,356 pounds on each vehicle. The weight of the truck and its load was 31,306 pounds. The weight of the trailer and its load was 19,306 pounds, both well within the 34,000 pound limit.

Speed becomes important in this case only if it was a proximate or a contributing cause of the accident. Alabam Freight Lines v. Phoenix Bakery, 64 Ariz. 101, 166 P.2d 816, 823. Driving in excess of the speed limit does not, in and of itself, constitute negligence per se. Id., McIver v. Allen, 33 Ariz. 28, 252 P. 5. The finding of the trial court that the speed of plaintiff's truck did not have the slightest connection with the accident is fully sustained by the evidence.

We shall now consider appellant's assignment predicated on the admission, over his objection, of certain declarations of the driver. In addition to the declaration heretofore set out it appears that another witness, a highway patrolman who repaired to the scene of the accident, was permitted to testify as to what the driver of defendant's truck told him about his inability to judge the width of the bridge. We do not deem it necessary to meticulously analyze these declarations to determine whether or not they legally form a part of the res gestæ. What we said in the recent case of Musgrave v. Karis, 63 Ariz. 417, 163 P.2d 278, is applicable to the evidence complained of. In that case we said:

"We are committed to the doctrine that whether a statement or declaration falls within and forms a part of the res gestæ is a matter that should be left to the discretion of the trial court. Pickwick Stages Corporation v. Williams, 36 Ariz. 520, 287 P. 440; Benton v. Regeser, supra [20 Ariz. 273, 279, 179 P. 966]; Southwestern Freight Lines v. Floyd, 58 Ariz. 249, 119 P.2d 120; Maynard v. Hall, 61 Ariz. 32, 143 P.2d 884, 150 A.L.R. 618. Where no abuse of discretion appears, the ruling of the trial court in this respect must stand. We cannot say that the trial court abused its discretion. The statements and conversation appear to have been made at least a half hour subsequent to the collision. They were not a part of the main event. Both apparently pertain to a past and completed occurrence and were not contemporaneous with the collision. There is nothing in the record to indicate the statements or conversation were of a spontaneous or instinctive character and logically related to and growing out of the main event."

With reference to the assignment of error now under consideration, the pronouncement of this court in Murphy v. Yeast, 59 Ariz. 281, 285, 126 P.2d 313, 315, is entirely applicable. There we said:

"We have repeatedly held that if there is sufficient legal and competent evidence in the record to sustain the findings and judgment, when the case is heard before the court, without a jury, it will not be reversed on account of the erroneous admission of evidence unless it affirmatively appears that the erroneous evidence affected the judgment of the court. There is ample evidence to sustain the judgment of the trial court, without consideration of any evidence which might have been erroneously admitted."

See also Home Owners' Loan Corp. v. Bank of Arizona, 54 Ariz. 146, 94 P.2d 437.

We are satisfied that all of the other evidence, excluding the so-called res gestæ declarations, overwhelmingly demonstrates that the defendant's negligence was the sole cause of the accident. No error in either the admission or exclusion of evidence is ground for disturbing a judgment unless refusal so to do would be inconsistent with substantial justice. Sec. 21-1503, A.C.A. 1939.

We believe that appellant's criticism of the amount of damages found by the trial court is without merit. In Mesa City v. Lesueur, 21 Ariz. 532, 540, 190 P. 573, 576, this court announced the proper measure of damages applicable in this case, as follows:

"The measure of damages for injuries to personal property less than its destruction is the difference in the value of the property immediately before and immediately after the injuries."

In addition to the costs of repairs and value of loss of use, the evidence in this case shows that the value of appellee's truck immediately before the accident was approximately $10,000, and immediately following the accident, in its damaged condition, was approximately $6,500, or a difference of $3,500. The judgment of the trial court was for the latter amount. There was, therefore, ample evidence to justify the judgment independently of the costs of repairs, loss of time, and similar items. The court also found that the cost of repairs would exceed $2500, and that when made, the truck would have a value of $1,000 less than it had immediately preceding the accident.

No error appearing in the record, the judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.