930 P.2d 1010

**MAX OF SWITZERLAND, INC.,** an Arizona corporation, Plaintiff–Appellant, Cross–Appellee,

v.

**ALLRIGHT CORPORATION OF DELAWARE, (FN),** a foreign corporation, doing business as Allright Corporation and/or Allright Auto Parts, and **Miles John McHugh,** an individual, Defendants–Appellees, Cross–Appellants.

No. 1 CA–CV 96–0180.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 14, 1997.

 

George M. Sterling, Jr., Phoenix, for Plaintiff–Appellant, Cross-Appellee.

Squire, Sanders & Dempsey by Mark A. Nadeau, Cynthia A. Ricketts, Phoenix, for Defendants–Appellees, Cross-Appellants.

## OPINION

WEISBERG, Judge.

Max of Switzerland, Inc. ("Max") appeals from the trial court's dismissal of its claims for property damage above and beyond the cost of repairs to its vehicle, for which Allright Corporation of Delaware ("Allright") had already paid Max's insurer. We conclude that Max has not lost its claims for diminution in value, loss of value, and loss of use ("remaining property damage claims") for which its insurer was not subrogated and thus could not settle. We therefore reverse and remand in part. We also affirm the trial court's denial of sanctions against Max.

### FACTUAL AND PROCEDURAL BACKGROUND

Elizabeth Haechler and an employee of Allright were involved in an automobile accident. Mrs. Haechler was driving a 1991 Jaguar owned by Max, a company owned by her husband, Max Haechler. Max had the car repaired at Scottsdale Auto Body, which billed $4,084.84 for the repairs. Max's insurer, Farmers Insurance Group ("Farmers") paid $3,084.84 to Scottsdale Auto Body for the repairs. Allright's insurer then paid Farmers $3,267.88. The check was made payable to "Farmers Ins Group as subrogee for Max of Switzerland," and indicated on its face, "Full and final settlement of PD subro compromise."

Max then filed an action against Allright for its remaining property damage claims to the Jaguar.[1] Allright filed a motion to dismiss those claims on the basis of accord and satisfaction, and attached a copy of the check payable to Farmers as an exhibit to its motion. Allright also filed a motion for sanctions under Rule 11, Arizona Rules of Civil Procedure ("Rule(s)"), arguing that Max's assertion of its remaining property damage claims was frivolous.

Max's response to the motion to dismiss was accompanied by Mr. Haechler's affidavit, which stated that Max had 1) neither assigned its remaining property damage claims to Farmers, nor authorized their settlement;

---

1. The Haechlers also filed claims against Allright for Mrs. Haechler's personal injuries and Mr. Haechler's loss of consortium, which are not part of this appeal.

2) never been compensated for such losses; and 3) never been compensated for the Jaguar's lost fair market value above and beyond the cost of repairs.

The trial court granted Allright's motion to dismiss, finding that Farmers' acceptance and negotiation of the check from Allright's insurer constituted an accord and satisfaction of all of Max's property damage claims. In addition, the trial court concluded that the complaint was frivolous because Max's attorney knew that Allright's insurer had paid Farmers for property damages. It therefore granted the motion for sanctions and ordered that Max's counsel pay $500 toward Allright's attorneys' fees. Max filed a motion for new trial and a motion to vacate the order imposing sanctions. Allright filed a response to the motions, as well as a motion for partial summary judgment on Max's property damage claims [2] and a statement of facts.

The trial court denied Max's motion for new trial, but, in the exercise of its discretion, set aside the sanctions, and subsequently entered judgment to that effect. Max timely appealed, and Allright timely cross-appealed the denial of sanctions.

## DISCUSSION

### I. Standard of Review

In reviewing the grant of a motion for summary judgment, we view the facts most favorably to the party against whom summary judgment was entered. *United Bank v. Allyn*, 167 Ariz. 191, 193, 805 P.2d 1012, 1014 (App.1990). Summary judgment is appropriate where the record shows there are no disputed material facts and the movant is entitled to judgment as a matter of law. *Id.* at 194–95, 805 P.2d at 1015–16. "Mere speculation or insubstantial doubt as to the facts will not suffice, but where the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *Id.* at 195, 805 P.2d at 1016.

Max argues that the trial court improperly treated Allright's motion to dismiss as a mo-

tion for summary judgment. In its motion for new trial, Max asserted for the first time that, if the trial court were going to consider matters outside the record, it was required to treat the motion as a motion for summary judgment, give the parties notice that it was doing so, and afford them a "reasonable opportunity" to present all pertinent material. *See* Ariz. R. Civ. P. 12(b).

In its response to the motion to dismiss, however, Max did not request further opportunity to present evidence, other than the attached affidavit from Mr. Haechler. Although the minute entry order did not expressly state that the court was treating the motion to dismiss as a motion for summary judgment, it clearly indicated that the court had considered the materials attached to Allright's motion to dismiss and Max's response. Because both parties submitted evidentiary material to the trial court, and the court considered that material, we must consider the motion to dismiss as a motion for summary judgment. *Franzi v. Koedyker*, 157 Ariz. 401, 408, 758 P.2d 1303, 1310 (App. 1985).

Additionally, Allright filed a subsequent motion for partial summary judgment on the same issue. Thus, even if the trial court should have expressly stated that it intended to treat the motion to dismiss as a motion for summary judgment, when responding to the subsequent motion for partial summary judgment, Max missed the opportunity to either provide additional pertinent information or seek a continuance pursuant to Rule 56(f). We therefore conclude that Allright's motion to dismiss was properly treated as a motion for summary judgment.

### II. Authority of Subrogee

Max next argues that the trial court erred as a matter of law when it ruled that the remaining property damage claims were settled when Allright's insurer paid Farmers, as Max's subrogee, the cost of repairs. Allright first responds that the various elements of damages cannot be separated: that there is

---

**2.** Allright's motion for partial summary judgment made the same arguments as its motion to dismiss.

only one claim for all "property damage." We agree with Max.

■ " 'The general rule is that where the loss exceeds the amount of insurance paid, the insured may sue in his own name and recover the full amount of the loss, the question of the distribution being a matter between the insured and the insurer only.' " *Bryan v. Southern Pac. Co.,* 79 Ariz. 253, 262, 286 P.2d 761, 766–67 (1955) (quoting *Powers v. Ellis,* 231 Ind. 273, 108 N.E.2d 132, 135 (1952)); *see also Tucson Gas, Elec. Light & Power Co. v. Board of Supervisors,* 7 Ariz.App. 164, 166, 436 P.2d 942, 944 (where insurer has paid *full amount* of insured's loss, it is the only real party in interest, and recognizing different rule applies "where only part of the claim is subrogated"), *modified on reh'g on other grounds,* 7 Ariz.App. 429, 440 P.2d 113 (1968).

■ In Arizona, property damage claims for a negligently damaged vehicle include compensation for the cost of repair, residual diminution in fair market value, and loss of use. *See Farmers Ins. Co. v. R.B.L. Inv. Co.,* 138 Ariz. 562, 564–65, 675 P.2d 1381, 1383–84 (App.1983). In *R.B.L. Investment,* Division II of this court awarded a car dealer both its interest expense incurred while the car was in the repair shop and not available for sale, and the diminution in value resulting from the car having been in an accident and repaired. *Id.* at 565, 675 P.2d at 1384. These amounts were awarded in addition to the cost of repairs previously awarded. *Id.*

Each element of "property damage" may be individually established. As *R.B.L. Investment* illustrates, the different elements of the total "property damage" are distinguishable and separately compensable. 138 Ariz. at 564–65, 675 P.2d at 1383–84 (cost of repairs, loss of use, and diminution in value are all parts of property damage claim); *see also* Restatement (Second) of Torts § 928 (damages for harm to chattels include the difference in value, or the cost of repair with allowance for any difference between original value and post-repair value, *and* loss of use).

In the instant case, Farmers paid only part of the property damage—the cost of repairs

less Max's deductible. Mr. Haechler's affidavit established that Max had not been compensated for the remaining property damage claims. Such damages are compensable if proven. *R.B.L. Inv. Co.,* 138 Ariz. at 564, 675 P.2d at 1383 " 'If this sort of depreciation is real, and can be established, there seems no reason at all to deny full compensation by limiting recovery to cost of repairs.' " (*quoting* D. Dobbs, *Remedies,* § 5.10, at 380 (1973)).

Allright nevertheless argues that the negotiation of its $3,084.84 check to Farmers constituted an accord and satisfaction of all of Max's property damage claims. It relies on *Flagel v. Southwest Clinical Physiatrists, P.C.,* 157 Ariz. 196, 755 P.2d 1184 (App.1988), which held that payment of the undisputed part of a claim, that had both disputed and undisputed elements, constituted sufficient consideration to support an accord and satisfaction. *Id.* at 202, 755 P.2d at 1190. But *Flagel* also held that there are four elements of an accord and satisfaction: (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; and (4) consideration. *Id.* at 200, 755 P.2d at 1188. Here, the critical issue is whether Farmers was a competent party to settle all of Max's property damage claims. We conclude that it was not.

■ Farmers negotiated with Allright as Max's subrogee. Allright's check to Farmers explicitly stated that it was payable to Farmers "*as subrogee*" for Max, and that it was the full and final settlement of "PD *subro* compromise." (Emphasis added.) Where an insurer pays only part of a claim, it becomes the subrogee only for the amount paid to the insured. *See United Pac./Reliance Ins. Co. v. Kelley,* 127 Ariz. 87, 89–90, 618 P.2d 257, 259–60 (App.1980); *Bryan,* 79 Ariz. at 262, 286 P.2d at 766–67. Since Farmers was not Max's subrogee for all of the property damage claims, *see Kelley,* 127 Ariz. at 89–90, 618 P.2d at 259–60; *Bryan,* 79 Ariz. at 262, 286 P.2d at 766–67, it did not have the authority to settle any of Max's property damage claims except for the cost

of the repairs.[3]

### III.  Apparent Authority

■ Allright also argues that Farmers had apparent authority to settle all of Max's property damage claims.  "[A]pparent authority exists where a third person reasonably believes an agent has the authority of the principal."  *Hartford v. Industrial Comm'n,* 178 Ariz. 106, 110, 870 P.2d 1202, 1206 (App.1994)(citing Restatement (Second) of Agency § 8 cmt. a (1958)).  Significantly, " '[t]he principal must make some manifestation to the third party which could reasonably be relied upon to indicate that the agent had the alleged authority.' "  *Id.* (*quoting Hudlow v. American Estate Life Ins. Co.,* 22 Ariz.App. 246, 248, 526 P.2d 770, 772 (1974)); *see also Anchor Equities, Ltd. v. Joya,* 160 Ariz. 463, 466–67, 773 P.2d 1022, 1025–26 (App.1989).

■ Allright contends that, "[w]hen Max submitted its property damage claim to Farmers, it empowered Farmers with the apparent authority to settle any property damage claim that Max may have had."  But Max submitted only a portion of its property damages to Farmers for payment—the cost of repairs.  Merely obtaining insurance and submitting a claim to the insurer are not enough to have led Allright's insurer to reasonably believe that Max had thereby conferred such broad authority upon Farmers.

Furthermore, Farmers requested payment from Allright's insurer for only "the amount shown on the attached repair bill."  Based on just this information, Allright had no grounds to reasonably believe that Farmers was authorized to settle any portion of Max's property damage claims other than the repair costs.  In fact, Allright's adjuster even ac-

knowledged in his letter to Max's attorney that there might be a remaining property damage claim for the car's diminution in value.

Allright obviously knew that it was paying Farmers as Max's subrogee, but did not explore the scope of that subrogation.  Allright has failed to illustrate any action by Max that could have led it to reasonably believe that Farmers was authorized to settle *all* of Max's property damage claims.  Summary judgment, therefore, cannot be upheld on the theory of apparent authority.  Accordingly, we remand this matter for further proceedings on Max's property damage claims.

### IV.  Cross Appeal on Denial of Sanctions

Since Max may pursue the remaining property damage claims, its complaint was not frivolous.  We therefore uphold the trial court's denial of Allright's motion for sanctions.

### CONCLUSION

The summary judgment dismissing Max's remaining property damage claims is vacated, the trial court's denial of Allright's motion for sanctions is affirmed, and the matter is remanded for further proceedings consistent with this opinion.

GARBARINO, P.J., and TOCI, J., concur.

---

3.  In its response to Allright's motion to dismiss, Max explicitly abandoned any claim to any excess repair costs.