260 P.3d 314

**Paul OLIVER, Plaintiff/Appellee,**

v.

**James HENRY, Defendant/Appellant.**

No. 1 CA–CV 10–0701.

Court of Appeals of Arizona, Division 1, Department E.

July 28, 2011.

Wattel & York By Michael L. York, Adam V. Schenk, Ryan Holzer, Chandler, Attorney for Plaintiff/Appellee.

Ehmann DeCiancio, P.L.L.C. By Joel De-Ciancio, Christopher Robbins, Tempe, Attorneys for Defendant/Appellant.

## OPINION

WINTHROP, Judge.

¶ 1 Defendant, James Henry, appeals the trial court's ruling that Plaintiff, Paul Oliver, experienced an actual and provable financial loss for diminished value of his automobile after an accident, despite the fact that Oliver did not sell, exchange, or otherwise dispose of the automobile. We affirm.

## BACKGROUND

¶ 2 The material facts are uncontested: In October 2008, Oliver purchased a 2008 Jeep Wrangler at a pre-tax price of $23,296. In December 2008, Henry and Oliver were involved in a motor vehicle accident. Henry admitted that his negligence caused the accident, and his insurer paid approximately $15,535 to repair the Jeep Wrangler to industry standards.

¶ 3 In March 2009, Oliver retained a purported appraisal expert, who estimated that, even though repaired, the Jeep Wrangler had suffered a loss in value of $8,975 as a result of the accident. In April 2009, Oliver spoke with a sales manager at ABC Nissan to determine the post-repair trade-in value of the Jeep Wrangler. At that time, the sales manager informed Oliver that ABC Nissan would offer him $10,000 for the vehicle based on the fact that the vehicle would have to be "wholesaled" due to its damage history. Oliver admittedly did not plan to trade, sell, or otherwise dispose of the vehicle at that time or any time soon; instead, he planned to continue to use it in the same manner as he had previously used it.

¶ 4 In September 2009, Oliver filed a complaint against Henry, seeking compensation for the Jeep Wrangler's diminished value. Henry admitted his negligence caused Oliver to suffer damage to his property, but Henry alleged the complaint failed to state a claim upon which relief may be granted because the "claim for diminished value is not actual and provable, and [Oliver] has not suffered an actual pecuniary loss."

¶ 5 Henry moved for summary judgment, arguing that as a matter of law, Oliver could not establish an actual and provable loss of diminished value because Oliver never tried to sell or trade in the Jeep Wrangler and continued to use and drive it exactly as he had since he bought it. Henry maintained that, although the fact of the accident could potentially result in a reduction in the vehicle's market value, without selling or trading the vehicle, any attempt to establish its post-repair value was speculative.

¶ 6 Oliver filed a response, arguing that the vehicle need not be sold or exchanged to establish its post-repair diminution in value. Oliver further argued that the residual loss in fair market value of a vehicle following repairs should be measured by the difference in the value immediately before and immediately after the loss, and he maintained that "the preferred method for proving the loss is by using estimates and expert appraisals."

¶ 7 In a signed minute entry order filed June 8, 2010, the trial court denied Henry's motion for summary judgment:

> The Court has considered Defendant's Motion for Summary Judgment, Plaintiff's Response thereto, and Defendant's Reply. The Court disagrees with Defendant's assessment of the case law on the issue of diminution of value. Defendant has cited no case wherein recovery of damages for the diminution of value was contingent upon the sale of the vehicle. At best, the case law requires only that there be proof of such damages. While it is true that proof could, of course, be predicated upon a reduced amount paid upon sale, it is equally true that proof could come in another form, such as the evidence proffered by Plaintiff in this case through expert testimony. The fact that a vehicle is not yet sold does not make the damages "unrealized" or legally impermissible. As quoted in *Farmers Ins. Co. of Arizona v. R.B.L. Inv. Co.*, 138 Ariz. 562, 564, 675 P.2d 1381, 1383 (1983):

> However satisfactory the repairs may be in, say, the operation of a car, the owner may quite possibly find that the trade-in value of his car is less when he seeks to purchase a new automobile, or that its cash sale value is less throughout the immediate life of the car. If this sort of depreciation is real, and can be established, there seems no reason at all to deny full compensation by limiting recovery to cost of repairs. D. Dobbs, Remedies, § 5.10, at 380 (1973).

> In this case, Plaintiff has offered sufficient proof of diminution of value to withstand a motion for summary judgment. Therefore,

> **IT IS ORDERED** denying Defendant's Motion for Summary Judgment.

(Emphasis omitted.)

¶ 8 The case proceeded to arbitration, and the arbitrator awarded Oliver $8,975.00 for diminished value plus costs in the amount of $941.98. The superior court confirmed the award in a formal judgment, and this timely appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (West 2011).[1]

## ANALYSIS

¶ 9 Henry argues that the trial court erred in ruling Oliver offered sufficient proof to demonstrate he experienced an actual financial loss for diminished value of his automobile. Noting that repairs were made to industry standards; Oliver never tried to sell, trade in, or otherwise dispose of the vehicle; and Oliver continues to use the vehicle in the same manner and for the same purposes as he had previously, Henry maintains that unless Oliver sold or otherwise exchanged the Jeep Wrangler, no actual and provable loss occurred.

¶ 10 The issue presented for our review is solely a question of law, which we decide independently of the trial court's conclusions. *See R.B.L. Inv. Co.*, 138 Ariz. at 563, 675 P.2d at 1382 (citing *Assoc'd Students v. Ariz. Bd. of Regents*, 120 Ariz. 100, 104, 584 P.2d 564, 568 (App.1978)); *see also United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990) (recognizing that although our review of a ruling on a motion for summary judgment is made on the basis of the record made in the trial court, our review is *de novo*). Summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1); *accord Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982).

¶ 11 In general, the measure of damages for injury to personal property when it is not destroyed is the difference in the value of the property immediately before and immediately after the injury. *R.B.L. Inv. Co.*, 138 Ariz. at 564, 675 P.2d at 1383 (citing *Anderson v. Alabam Freight Lines*, 64 Ariz. 313, 319, 169 P.2d 865, 869 (1946)). When the property is repaired or restored, however, the measure of damages includes the cost of repair *with due allowance for any difference between the value of the property before the damages and the value after repairs*, as

---

1. The Arizona Legislature recently renumbered A.R.S. § 12–2101. *See* 2011 Ariz. Sess. Laws, ch. 304, § 1 (1st Reg. Sess.) (effective July 20, 2011).

well as the loss of use. *See id.* (citing Restatement (Second) of Torts ("the Restatement") § 928 (1977)).[2] As the trial court noted in its ruling, this court recognized in *R.B.L. Investment Co.* that:

> There seems no warrant at all for insisting that the owner content himself with the repair costs if they are less than the depreciation, provided depreciation can be and is adequately proven. However satisfactory the repairs may be in, say, the operation of a car, the owner may quite possibly find that the trade-in value of his car is less when he seeks to purchase a new automobile, or that its cash sale value is less throughout the immediate life of the car. If this sort of depreciation is real, and can be established, there seems no reason at all to deny full compensation by limiting recovery to cost of repairs.

*Id.* (quoting D. Dobbs, *Remedies* § 5.10, at 380). "Jurisdictions that have addressed the issue seem to have generally held that the measure of compensation to the owner of a negligently damaged motor vehicle may include the cost of repair and proven residual diminution in fair market value." *Id.* (citations omitted); *accord Max of Switzerland, Inc. v. Allright Corp. of Delaware,* 187 Ariz. 496, 499, 930 P.2d 1010, 1013 (App.1997) (recognizing that "property damage claims for a negligently damaged vehicle include compensation for the cost of repair, residual diminution in fair market value, and loss of use" (citing *R.B.L. Inv. Co.,* 138 Ariz. at 564–65, 675 P.2d at 1383–84)).

¶ 12 Henry states that he does "not dispute the general right in a tort action to collect the diminished value of an automobile after the automobile has been repaired." Citing this court's statement in *R.B.L. Investment Co.* that "the damaged party had actual, provable losses for market value and loss of use over and above the cost of repairs," *see* 138 Ariz. at 564, 675 P.2d at 1383,

he argues, however, that such recovery should be permitted "*only if* the owner of the automobile has suffered an 'actual and provable' loss." He further maintains that, to be "actual" and "provable," the loss must be occasioned by the sale or other disposal of the vehicle; otherwise, the loss is not "realized," the right to bring the claim is not triggered, and the amount of the loss is mere speculation that should not form the basis of a judgment. We disagree.

¶ 13 Although the damaged vehicle at issue in *R.B.L. Investment Co.* was repaired and sold, *see id.* at 565, 675 P.2d at 1384, this court did not predicate its opinion in that case on the requirement of a sale, and Henry cites no authority directly supporting his position that Oliver's diminished value damages are not realized or "actual" until Oliver has sold or otherwise disposed of the Jeep Wrangler and that such damages cannot be proved by other means, such as expert testimony. Further, the case Henry primarily relies on for his argument that a sale is required, *Gary v. Allstate Insurance Co.,* 250 So.2d 168 (La.Ct.App.1971), makes no such explicit holding and instead positively acknowledges cases in which expert testimony rather than a sale was utilized to determine the depreciation in value of a damaged vehicle immediately before and shortly following an accident. *Id.* at 169–70 (citing *Hamilton v. Dalrymple,* 135 So.2d 536, 539–40 (La.Ct.App.1961); *Baillio v. W. Cas. & Sur. Co.,* 189 So.2d 605, 608 (La.Ct.App.1966); *Kinchen v. Hansbrough,* 231 So.2d 700, 706–07 (La.Ct.App. 1970); *Bergeron v. C. Hugh Tarver, Jr. & Assocs., Inc.,* 233 So.2d 704, 706 (La.Ct.App. 1970)). Accordingly, *Gary* may be construed as actually supporting the use of estimates or expert appraisals in measuring the difference between the pre-loss and post-repair value of a damaged vehicle.

¶ 14 Moreover, in the other cases Henry cites as support for his argument that Oliver

---

2. Section 928 of the Restatement provides as follows:

When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after

the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and

(b) the loss of use.

is not entitled to damages for diminution in value absent a sale, the courts simply held that sufficient evidence must exist showing the amount of decrease in the value of the damaged vehicle and did not require that the vehicle have been sold. *See Volkswagen of Am., Inc. v. Robertson,* 713 F.2d 1151, 1167–74 (5th Cir.1983); *Anderson,* 64 Ariz. at 319, 169 P.2d at 869; *Am. Serv. Ctr. Assocs. v. Helton,* 867 A.2d 235, 244 n. 13 (D.C.2005); *Wiese–GMC, Inc. v. Wells,* 626 N.E.2d 595, 599–600 (Ind.Ct.App.1993); *Giles Lafayette, Inc. v. State Farm Mut. Auto Ins. Co.,* 467 So.2d 1309, 1311 (La.Ct.App.1985); *Ellis v. King,* 184 W.Va. 227, 400 S.E.2d 235, 238–39 (1990).

¶ 15 We also find unavailing Henry's reliance on comment (a) to § 928 of the Restatement, which provides that allowance for a deduction (or offset) in damages need not be made if a damaged item increases in value but the increase is neither realized nor likely to be realized through sale and its usefulness to the owner is not increased.[3] Henry maintains that by substituting the word "decrease" for the word "increase" in the comment, the inverse is true as well; in other words, a decrease in the value of the damaged item when it is repaired need not be considered unless the decrease is realized through sale or exchange. We disagree. If comment (a) was meant to support this alternate position, it would simply indicate as such. Read aptly, § 928 and comment (a) support the firmly established principle that damages should be awarded to fairly and adequately compensate an injured party for his loss, while recognizing that the proper measure of damages must be flexible enough to fit all circumstances, and although an ag-

grieved party must be compensated, he should not be placed in a better position. *See Wiese–GMC, Inc.,* 626 N.E.2d at 597 (citations omitted). The Restatement provides for full compensation for a victim while acknowledging and addressing the possibility that a victim could receive a windfall.[4] Comment (a) simply recognizes that a tortfeasor who overcompensates a victim by increasing the value of the victim's property through repairs may receive an allowance, or credit, for that overcompensation if the victim sells the property soon thereafter or it can be shown that the property's usefulness to the victim has increased; otherwise, credit for the overcompensation is not recognized.

¶ 16 Finally, we agree with Oliver that public policy does not support the idea that a victim should be required to sell his vehicle in order to establish a claim for diminished value and to prove the amount of the loss. As Oliver notes, a victim may encounter difficulty selling the vehicle due to its accident history, which may occasion a delay in the sale and eventually cause natural depreciation to affect the sales price, especially if the damage was extensive. Further, even a vehicle's actual sales price may not represent the vehicle's fair market value, and expert appraisal would likely still need to be utilized to establish a vehicle's pre-loss value.

¶ 17 We conclude that Arizona law does not require the sale or transfer of a damaged vehicle to establish a claim for diminution in value or to prove the amount of the loss in value. In this case, Oliver's loss occurred the moment the vehicle was damaged, and even though it was repaired to industry standards, it could still have dimin-

---

**3.** Comment (a) provides in part as follows:

> The full value of a chattel that has been tortiously harmed but that has not been converted or made completely worthless cannot be obtained by the owner; he cannot abandon it and recover its value in damages. He can recover only the difference in its value before and after the harm, except that if, after the harm, it appears to be economical to repair the chattel, he can elect to recover the cost of repairs, together with the value of the loss of use during the repairs or other losses that may have resulted during that time.
>
> Due allowance is made for increase in value of the chattel as a result of new materials used.

This does not require a deduction for the increase in value if the increase has not been realized and is not likely to be realized by the owner, as when, instead of selling it while it retains its increased value, he continues to keep and use it and its usefulness to him is not increased.

**4.** Of course, no single fixed rule for recovery of damages for injury to personal property will invariably make a victim whole while at the same time guaranteeing that the victim is not overcompensated; rather, the measure of damages depends on the facts of the particular case.

ished value. Oliver was not required to sell, exchange, or otherwise dispose of his damaged and subsequently repaired Jeep Wrangler in order to demonstrate an actual and provable loss in value; instead, the loss could be established through other competent means, such as expert appraisal of the pre-loss and post-repair values.

## CONCLUSION

¶ 18 The trial court's order and judgment are affirmed. We award Oliver his costs on appeal pursuant to A.R.S. § 12–342(A) (2003)

and interest on the judgment pursuant to A.R.S. § 12–347 (2003).

CONCURRING: MAURICE PORTLEY, Presiding Judge and ANN A. SCOTT TIMMER, Chief Judge.