NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOSEPH L. BALDINO, et al., *Plaintiffs/Appellants*,

ROGER ASHKENAZI, et al.,
*Plaintiffs/Appellees,*

*v.*

GREENBERG TRAURIG, LLP, a limited liability partnership,
*Defendant/Appellee.*

No. 1 CA-CV 13-0717

FILED 1-13-2015

---

Appeal from the Superior Court in Maricopa County
No.  CV2010-020851
The Honorable Arthur T. Anderson, Judge

**VACATED AND REMANDED**

---

COUNSEL

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik and Brian Hembd
*Counsel for Plaintiffs/Appellants*

Evans Scholz Williams & Warncke LLC, Atlanta, GA
By Rickman P. Brown

Sherman & Howard LLC, Phoenix
By David A. Weatherwax and Dewain D. Fox

Ross & Orenstein, LLC, Minneapolis, MN
By Jeff I. Ross
*Co-Counsel for Plaintiffs/Appellees*

Galbut & Galbut, Phoenix
By Martin R. Galbut and Michaile J. Berg

Williams & Connolly LLP, Washington, DC
By Kenneth C. Smurzynski and Collette T. Connor
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Maurice Portley and Judge Jon W. Thompson joined.

---

**G O U L D**, Judge:

¶1        Plaintiffs/Appellants Baldino, et al. ("the Baldino Plaintiffs") appeal from the trial court's entry of judgment pursuant to a settlement agreement. Plaintiffs/Appellants argue the court incorrectly concluded the attorneys had apparent authority to settle on behalf of the Baldino Plaintiffs. Because we find a genuine factual dispute regarding the attorneys' apparent authority, we vacate the judgment and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The facts are undisputed.  Mortgages Ltd. and/or its affiliates sold investment securities to a number of individuals before going bankrupt.  As a result, multiple lawsuits were filed against the professional firms that served as Mortgages Ltd.'s securities counsel and auditors, for torts allegedly committed by those firms in the course of their representation of Mortgages Ltd.  The plaintiffs in this case ("the Ashkenazi Plaintiffs") opted out of a class action lawsuit filed against these professional firms and brought separate claims against Defendants in July 2010.

¶3        The Ashkenazi Plaintiffs hired attorneys Rickman Brown and Jeff Ross to represent them.  All the Ashkenazi Plaintiffs signed an engagement agreement outlining the scope and purpose of the representation.  The engagement agreement contained a provision stating that in the event a lump sum group settlement offer was made, a majority of the plaintiffs could compel a settlement.

¶4        On June 18, 2012, a global settlement was reached following a mediation held in New York on April 17-18, 2012, between the Greenberg Traurig Defendants ("GT Defendants") and all the plaintiff groups, including the Ashkenazi Plaintiffs.  After the mediation, the Ashkenazi Plaintiffs were informed via email that a settlement agreement had been tentatively reached.  Brown and Ross then filed a notice of settlement in the trial court on June 21, 2012.

¶5        About a month later, a group of six plaintiffs from the Ashkenazi Plaintiffs, composed of Joseph and Helen Baldino, Eva Sperber-Porter, and the financial entities they controlled ("the Baldino Plaintiffs"), filed a motion to substitute counsel.  The court granted the Baldino Plaintiffs' motion to substitute counsel, but the court directed that the substitution would not negate or affect prior settlements reached. Thereafter, the GT Defendants and the remaining Ashkenazi Plaintiffs ("the Non-Baldino Plaintiffs") jointly moved for entry of judgment in accordance with the settlement agreement.

¶6        The Baldino Plaintiffs filed a motion opposing entry of judgment.  The motion argued the Baldino Plaintiffs could not be bound by the settlement agreement because they never agreed to it and Brown and Ross did not have authority to agree to it on their behalf.  After considering all parties' motions and the arguments of counsel, the court found attorneys Brown and Ross had apparent authority to settle the Greenberg claims.  The

court reasoned that the fact that the attorneys represented all the plaintiffs from inception, during mediation, and at the settlement discussions justified the GT Defendants' belief the attorneys had authority to settle.

¶7 The Baldino Plaintiffs filed a Rule 59 motion for new trial arguing there was no evidence of action by the principal, the Baldino Plaintiffs, that could lead to a reasonable inference of apparent authority. The court denied this motion, and the Baldino Plaintiffs timely appealed.

## DISCUSSION

I. Supplemental Authority

¶8 Both parties have filed and heavily litigated supplemental citations of authority. We will only address the motions filed that are relevant to the outcome of this decision, all other motions we disregard as moot. Our consideration is guided by the following principles. A party may supplement the citation of legal authority when "pertinent and significant authorities come to the attention of a party after the party's brief has been filed . . . but before decision." Arizona Rules of Civil Appellate Procedure 17. However, "we will not address arguments raised for the first time under the guise of supplemental authority." *Rowe Int'l, Inc. v. Ariz. Dep't of Revenue*, 165 Ariz. 122, 128, 796 P.2d 924, 930 (App. 1990).

¶9 We will consider the portion of the Baldino Plaintiffs' supplemental citation of authority that cites *Robertson v. Alling*, 235 Ariz. 329, 332 P.3d 76 (App. 2014), to determine the applicable standard of review and the application of principles of apparent authority. However, the portions of the supplemental citations raising the argument that under Arizona Rule of Civil Procedure 80(d) the settlement agreement is invalid, we disregard. This argument was available to Plaintiffs/Appellants, but it was not argued in their appellate briefs. Accordingly, we consider it waived. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62, 211 P.3d 1272, 1289 (App. 2009) (stating that failure to present arguments in the opening briefs "can constitute abandonment and waiver").

II. Standard of Review

¶10 "Generally, whether agency exists is a question of fact, but when the material facts are not in dispute, the existence of such a relationship is a question of law for the court to decide." *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 29, ¶ 12, 270 P.3d 852, 856 (App. 2011). Here, the court based its ruling that the attorneys acted within the scope of their apparent authority on the arguments of counsel and documentary

evidence in the record; "[i]n effect, the trial court granted summary judgment." *Canyon Contracting Co. v. Tohono O'Odham Housing Authority*, 172 Ariz. 389, 390, 837 P.2d 750, 751 (App. 1992).

¶11      In reviewing the court's ruling we "determine de novo whether the trial court correctly applied the law and whether any genuine disputes exist as to any material fact." *Robertson*, 235 Ariz. at 333, ¶ 7, 332 P.3d at 80.  Specifically, we must examine "whether the facts presented are such that reasonable people could only agree" that the attorneys were cloaked in apparent authority to enter a settlement on the Baldino Plaintiffs' behalf.  *Canyon Contracting*, 172 Ariz. at 390, 837 P.2d at 751.  We view the facts "in the light most favorable to the . . . nonmoving party on the motion to enforce the settlement."  *Robertson*, 235 Ariz. at 332, ¶ 2, 332 P.3d at 79.

III.     Apparent Authority

¶12      "[A]s a general rule, lawyers have no inherent or implied authority to settle a case."  *Robertson*, 235 Ariz. at 334, ¶ 16, 332 P.3d at 81.  "However, if the client places the attorney in a position where third persons of ordinary prudence and discretion would be justified in assuming the attorney was acting within his authority, then the client is bound by the acts of the attorney within the scope of his apparent authority."  *Arizona Title Ins. & Trust Co. v. Pace*, 8 Ariz. App. 269, 271-72, 445 P.2d 471, 473-74 (1968).

¶13      We focus on whether the principal's conduct could reasonably lead a third party to conclude the agent had authority. *Robertson*, 235 Ariz. at 335, ¶ 19, 332 P.3d at 82 ("Apparent authority is established by conduct of the principal."); *Max of Switzerland, Inc. v. Allright Corp. of Delaware*, 187 Ariz. 496, 500, 930 P.2d 1010, 1014 (App. 1997) ("'[A]pparent authority exists where a third person reasonably believes an agent has the authority of the principal.'") (quoting *Hartford v. Indust. Comm'n*, 178 Ariz. 106, 110, 870 P.2d 1202, 1206 (App. 1994)).  As a result, "[t]he principal must make some manifestation to the third party which could reasonably be relied upon to indicate that the agent had the alleged authority."  *Max of Switz.*, 187 Ariz. at 500, 930 P.2d at 1014 (alteration in original) (internal quotation marks omitted).  Additionally, "[t]he rule is well established . . . that the declarations of an alleged agent are not evidence of the fact of agency, nor the extent thereof."  *U.S. Smelting, Ref. & Mining Exploration Co. v. Wallapai Mining & Dev. Co.*, 27 Ariz. 126, 130, 230 P. 1109, 1110 (1924).

¶14      "[V]iewing the underlying facts in the light most favorable to the [Baldino Plaintiffs]," as we must, we conclude "that reasonable minds

could draw different inferences from the undisputed facts." *Robertson*, 235 Ariz. at 337, ¶ 27, 332 P.3d at 84. Thus, the court improperly resolved this issue as a matter of law. *Id.* at 338, ¶ 30, 332 P.3d at 85.

¶15        We recognize that this is a close case, and that a number of facts support an inference that Brown and Ross were acting under apparent authority. It is undisputed that as members of the Ashkenazi Plaintiff group, the Baldino Plaintiffs signed an engagement letter agreeing to be bound by any settlement accepted by a majority of the plaintiffs. Both the Non-Baldino and the Baldino Plaintiffs were represented by Brown and Ross during the mediation and at all settlement negotiations. At no point during the settlement negotiations did the Baldino Plaintiffs indicate to the GT Defendants that Brown and Ross lacked the authority to negotiate a settlement on their behalf. In addition, the executed settlement agreement contains an express representation from Brown and Ross that they possessed authority to settle their clients' claims against the GT Defendants.

¶16        However, neither the fact that the Baldino Plaintiffs retained Brown and Ross as their attorneys, nor the statements of Brown and Ross as to their authority are sufficient, as a matter of law, to establish the fact of apparent authority. *Robertson*, 235 Ariz. at 334, ¶ 16, 332 P.3d at 81; *U.S. Smelting,* 27 Ariz. at 130, 230 P. at 1110. Rather, we must examine whether the Baldino Plaintiffs engaged in any conduct that would lead the GT Defendants to conclude that Brown and Ross had apparent authority to settle the case. *See supra*, at ¶ 13.

¶17        The record is sparse regarding the conduct of the Baldino Plaintiffs on this issue. Some of the facts in this case give rise to equally viable, conflicting inferences. For example, the GT Defendants contend that Baldino's decision not to attend the mediation gives rise to an inference that he authorized Brown and Ross to negotiate a settlement on his behalf. However, the fact that he did not attend the mediation can also lead to an inference that he did not support or approve of their settlement negotiations.

¶18        Both parties note that Sperber-Porter, the other individual in the Baldino Plaintiff group, attempted to attend the mediation in New York. When Sperber-Porter arrived, she was asked to leave by Brown and Ross, and she complied. The GT Defendants contend that when Sperber-Porter allowed herself to be excluded by her attorneys, this gave rise to an inference that her attorneys had authority to settle. In contrast, Sperber-Porter argues that her exclusion from the mediation by her attorneys would

indicate to the GT Defendants that Brown and Ross did not have authority to settle her claims.

**¶19** Moreover, there are facts in the record supporting an inference that Brown and Ross did not have apparent authority. Most importantly, the GT Defendants requested that each individual plaintiff sign an acknowledgement of the final settlement agreement. The record does not show whether the GT Defendants requested the acknowledgements as a routine matter, or because they doubted the attorneys' authority to settle on behalf of the plaintiffs. The record is also unclear on the question of whether the client acknowledgements were a condition precedent to finalizing the settlement agreement. However, the acknowledgement forms could support the inference that Brown and Ross did not have apparent authority to settle the case, and were required to obtain each client's approval of the settlement agreement.

**¶20** As in *Robertson*, "these competing inferences required a factual resolution and precluded the trial court from deciding the issue as a matter of law." *Robertson*, 235 Ariz. at 338, ¶ 30, 332 P.3d at 85. Accordingly, we remand this case for further proceedings to resolve these material fact disputes.

**¶21** Appellants request an award of fees and costs. In our discretion, we decline to award fees. However, upon compliance with ARCAP 21, Appellants are entitled to their costs.

## CONCLUSION

**¶22** Because a genuine issue of fact exists as to whether the attorneys, Brown and Ross, had apparent authority to settle on behalf of the Baldino Plaintiffs, we vacate the court's ruling granting the joint motion for entry of judgment and bar orders. We remand for additional proceedings to resolve this factual dispute.



Ruth A. Willingham · Clerk of the Court
FILED: ama